In the Matter of EXCELLO PRESS,
INCORPORATED, Debtor.

Appeal of Daniel A. ZAZOVE,
Attorney for Debtor.

Nos. 90–3455 and 90–3459.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1991.

Decided June 11, 1992.

Matthew F. Kennelly (argued), Cotsirilos, Stephenson, Tighe & Streicker, Chicago, Ill., for Daniel A. Zazove.

David Schachman (argued), Julia A. Fenton, Sachnoff & Weaver, Chicago, Ill., for Robert M. Schrayer Co.

Daniel A. Zazove, Karen Walin, Towbin & Zazove, Chicago, Ill., for Excello Press, Inc.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Daniel Zazove ("Zazove"), a Chicago attorney, filed a complaint on behalf of Excello Press, Inc. ("Excello"), debtor and plaintiff, against defendant Associated Agencies, Inc. ("Associated") for recovery of three allegedly preferential payments Excello made to Associated. Those payments made were for insurance coverage. The first two, totalling $6,116.52, were for one month's coverage and the third for

$5,963.94 was for two months' coverage. All the payments were for coverage that Associated had already provided to Excello and included payment of finance charges due to the delinquency. Associated responded to Excello's complaint by filing a motion for summary judgment which contended that the payments were made in the ordinary course of business and therefore not recoverable as preferential transfers under 11 U.S.C. § 547(c)(2). The bankruptcy court granted Associated's motion for summary judgment with respect to the first two payments but denied its motion as to the third payment, concluding that an issue of material fact existed regarding whether that payment for two-months' coverage was made in the ordinary course of business. On a second motion for summary judgment filed after this Court's opinion in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988), Associated argued that it was not a transferee under 11 U.S.C. § 550 and was therefore not liable to Excello. The bankruptcy court accepted Associated's argument and dismissed the remainder of Excello's case. Thereafter Associated moved for the imposition of sanctions against Zazove under Bankruptcy Rule 9011 (n. 1 *infra*).

Bankruptcy Judge Thomas James sanctioned Zazove in the amount of $11,916.52 for 1) filing the claim regarding the first two payments without adequate investigation and 2) failing to dismiss the claim regarding the third payment after Zazove learned of this Circuit's decision in *Bonded Financial Services, supra*, 104 B.R. 924. District Judge Suzanne B. Conlon affirmed the entry of sanctions against Zazove for "inadequate pre-filing investigation as to the first two payments," but reversed the entry of sanctions with respect to Excello's failure to dismiss the complaint since she concluded that Rule 9011 does not impose post-filing duties (App. 00017–00030) 120 B.R. 938. The district court remanded the case to the bankruptcy court to reduce the award of sanctions that had been imposed for failing to withdraw Excello's complaint. Both Zazove and Associated agree that to implement the district court's judgment, the bankruptcy court would merely subtract $1,500 from the original award of sanctions imposed by the bankruptcy judge.

On appeal, Zazove alleges that the district court erred in upholding sanctions against him for failing to conduct adequate pre-filing investigation. Associated does not cross-appeal from the district court's reversal of Rule 9011 sanctions against Zazove for failing to withdraw its claim; however, Associated now claims that this Court should impose such sanctions under 28 U.S.C. § 1927. This Court assumes jurisdiction under 28 U.S.C. § 158(d) and addresses the merits of these claims in turn.

### A. Jurisdiction

■ 28 U.S.C. § 158(d) provides for appeal from a final judgment issued by a district court pursuant to 28 U.S.C. § 158(a). In this case, the district court's judgment is final even though that judgment remanded a matter to the bankruptcy court. As stated in *In re Fox*, 762 F.2d 54 (7th Cir.1985), "[a]lthough a district judge's decision remanding a case to a bankruptcy judge normally is not final for purposes of appeal, it is final for those purposes if all that remains to do on remand is a purely mechanical, computational, or in short 'ministerial' task, whose performance is unlikely either to generate a new appeal or to affect the issue that the disappointed party was to raise on appeal from the order of remand." *Id.* at 55. In this case, the district judge remanded the case to the bankruptcy judge for performance of what the parties agree is a ministerial task—subtraction of $1,500 from the original award (see App. 00030). Because the issue remanded was ministerial, under *In re Fox* the district court's judgment is final and appealable under 28 U.S.C. § 158(d).

### B. Discussion of Bankruptcy Rule 9011

Rule 9011 of the Federal Rules of Bankruptcy Procedure, analogous to Rule 11 of the Federal Rules of Civil Procedure, provides that an attorney's signature on a filed document certifies, among other things, that "to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by ■

existing law or a good faith argument for the extension, modification, or reversal of existing law."[1] In Zazove's case, the bankruptcy judge imposed sanctions on the ground that Zazove had failed to make a reasonable pre-filing inquiry into the law and the facts even though the bankruptcy judge considered that Zazove's complaint for Excello was not itself frivolous. Indeed, the bankruptcy judge explicitly said that if Zazove had first conducted a reasonable inquiry, he might have then appropriately filed the same claim. Thus the judge stated in his opinion "[i]t may well be that after a reasonable investigation of the ordinary course of business a lawyer might still bring an action and let the court decide" (App. 00010).

■ The bankruptcy court asked precisely the right question—not whether the claim itself was frivolous or nonfrivolous, but whether Zazove conducted an adequate inquiry into the facts and the law before he filed the claim. In *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 932 (7th Cir.1989) (en banc), this Court recently stated that examination of the reasonableness of an attorney's inquiry "focuses on inputs rather than outputs, conduct rather than result." *Id.* (citing Stephen B. Burbank, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11*, 10–25 (American Judicature Society 1989)).[2] "Sanctuary as a result of a reasonable investigation ensures that counsel may take novel, innovative positions—that Rule 11 does not jeopardize aggressive advocacy or legal evolution." *Mars Steel Corp.*, 880 F.2d at 932; see also David B. Wilkins, *Who Should Regulate Lawyers?*, 105

Harv.L.Rev. 799, 839–844 (discussing potential dangers posed by analogous Civil Rule 11).

■ This Court therefore addresses the same question as that addressed by the bankruptcy court—whether Zazove's pre-filing investigation was reasonable. However, we do not examine that question *de novo*. Instead, on appeal we review the bankruptcy court's imposition of Rule 9011 sanctions for abuse of discretion. *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359; *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 934–937 (7th Cir.1989) (en banc). Although deferential, our review is not toothless. See *In re Ronco, Inc.*, 838 F.2d 212, 217–218 (7th Cir.1988) ("Review under the abuse of discretion standard does not mean no appellate review").

The bankruptcy court imposed Rule 9011 sanctions against Zazove because it found that he had not conducted any inquiry into the ordinary course of business defense. Zazove argues that the sanctions imposed against him were an abuse of discretion because 1) he had no duty to investigate potential affirmative defenses and 2) even if he had such an obligation, he did conduct an objectively reasonable pre-filing investigation.

■ First, Zazove urges this Court to adopt a *per se* rule that courts can never impose Rule 9011 sanctions for counsel's failure to investigate an affirmative defense. We decline to do so. Under Rule 9011 an attorney is required to make a "reasonable inquiry" before filing a document. The determination of the reasonableness of an attorney's inquiry necessar-

---

**1.** In pertinent part, Rule 9011 provides: "Every * * * pleading * * * served or filed in a case under the Code on behalf of a party represented by an attorney * * * shall be signed by at least one attorney of record * * * The signature of an attorney * * * constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation * * * If a document is signed in viola-

tion of this rule, the court on motion or on its own initiative, shall impose on the person who signed it * * * an appropriate sanction."

**2.** Burbank notes two approaches that courts have taken when determining Rule 11 sanctions—a "conduct" approach which examines whether an attorney conducted reasonable pre-filing inquiry, and a "product" approach which examines whether the document ultimately filed by the attorney was well grounded in fact and law. See also Stephen B. Burbank, *The Transformation of American Civil Procedure: The Example of Rule 11*, 137 U.Pa.L.Rev.1925 (1989).

ily depends upon the circumstances of the particular case. *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d at 932. Thus how much investigation is reasonable in a given case is a question of line-drawing. Ordinarily, it will be reasonable for a plaintiff's counsel not to make a pre-filing investigation regarding affirmative defenses. See *In re Western Die Casting Co.*, 106 B.R. 645, 649 (Bankr.N.D.Cal.1989). However, at times an attorney may have a responsibility to examine "whether any *obvious* affirmative defenses bar the case." *White v. General Motors Corp.*, 908 F.2d 675, 682 (10th Cir.1990) (emphasis added), certiorari denied, — U.S. —, 111 S.Ct. 788, 112 L.Ed.2d 850.

Because we decline to adopt a *per se* rule, we address the reasonableness of Zazove's pre-filing inquiry, given the circumstances of this case. The bankruptcy court held that Zazove failed to conduct a reasonable pre-filing inquiry regarding the ordinary course of business defense. The judge based his holding on the fact that Zazove had already investigated a different defense, and that he had easy access to all of the information necessary in order to prove that the ordinary course of business defense, if successful, would bar his suit. (App. 00025–00026). Examination of one affirmative defense does not necessarily require examination of another; however, given the context of this case, Zazove may have had a responsibility to examine the ordinary course of business defense if all of the information necessary to conclusively establish that defense was in Excello's control.

Zazove advanced two reasons in support of Excello's claim that its two one-month insurance coverage payments to Associated were not made in the ordinary course of business. First, he argued that the payments were late and therefore presumptively outside the ordinary course of business under this Court's opinion in *In the Matter of Xonics Imaging, Inc.*, 837 F.2d 763, 765 (7th Cir.1988). *Xonics* held that "the conduct of a debtor, after becoming insolvent, in failing to make payments within the time required by his contract with the creditor is presumptively non-ordinary." *Id.* at 767 (citing *In re Craig Oil Co.*, 785 F.2d 1563, 1567 (11th Cir.1986)). *Xonics* was decided five months before the bankruptcy judge first granted summary judgment to Associated, and was raised at the bankruptcy court's first hearing regarding summary judgment (Transcript of July 21, 1988 Proceedings). *Xonics* supports Zazove's argument that Excello's late payments were presumptively non-ordinary. Zazove had information from his client, on which he was entitled to rely, which suggested that the payments were late. In particular, Zazove had checks and invoices of Excello's payments to Associated which suggested that the three transfers at issue were paid for services that had already been provided and that Excello had been charged finance charges due to delinquency on each of the transfers (Bkr. Rec. 46 at 6).

But even though Zazove believed that the payments were late and might be considered non-ordinary under *Xonics*, Excello possessed evidence which showed that Excello and Associated had established a continuing pattern of late payment, evidence which rebuts the *Xonics* presumption. In fact, Zazove supported his cross-motion for summary judgment as to the September 20, 1985, payment with the affidavit of Eugene Laster, former executive vice president of Excello. In that affidavit Laster stated that he was familiar with Excello's practices regarding payment of its debt to Associated based upon his personal supervision of such payment. The evidence showed that over a three-year period Excello made payment within 30 to 90 days of the invoice date and the July and August payments were made within 60 days of invoice. (Aff. of Schrayer, Tr. at 19–21, June 30, 1988). In Excello's response to the motion for sanctions and to the first motion for summary judgment, it stated that during the year immediately preceding the bankruptcy filing the payment was late and finance charges were assessed six times. [Three times prior to the payments at issue.] (R. at 46 & 127). Judge James found that even though such information was easily available, Zazove made *no* factual inquiry regarding this course of conduct between the parties, seeming to justify sanctions against him.

However, Zazove also advanced a second reason why the payments should have been considered outside the ordinary course of business. The ordinary course of business defense, set forth in 11 U.S.C. § 547(c)(2) (1988), prohibits the trustee from avoiding a transfer to the extent that it was:

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; *and*

(C) made according to ordinary business terms. (*Id.*)

Although *Xonics* addressed the requirements of subparagraph (B), 837 F.2d at 764 (the parties in *Xonics* stipulated that (A) and (C) had been satisfied), Zazove's case concerns subparagraph (C) as well. In his response to Associated's first motion for summary judgment, Zazove argued that a material issue of fact remained as to whether the transfer was made according to ordinary business terms.

At the time Zazove filed his complaint (September 15, 1987), the majority of published bankruptcy court decisions interpreted subparagraph (C) to require substantially the same showing as that required by subparagraph (B), *i.e.*, evidence of the ordinary practice *between the parties.* See, *e.g., In re Ewald Bros., Inc.,* 45 B.R. 52 (Bankr.D.Minn.1984); *In re White,* 58 B.R. 266 (Bankr.E.D.Tenn.1986); *In re Decor Noel, Corp.,* 65 B.R. 707 (Bankr.W.D.Tenn. 1985); *In re Sunup/Sundown, Inc.,* 66 B.R. 1021 (Bankr.S.D.Fla.1986).

Yet a minority of bankruptcy court decisions followed an approach that required separate evidence under subparagraph (C)—evidence that the manner and timing of the payments were consistent with ordinary practice in *the parties' industry.* See, *e.g., In re Production Steel, Inc.,* 54 B.R. 417, 423 (Bankr.M.D.Tenn.1985); *In re Alpex Computer Corp.,* 60 B.R. 315, 318–319 (Bankr.D.Colo.1986). See also *In re Steel Improvement Co.,* 79 B.R. 681, 683–684 (Bankr.E.D.Mich.1987) (describing the split of authority).

A district court in the Northern District of Illinois appeared to have employed the minority approach in *In re Energy Cooperative, Inc.,* 103 B.R. 171, 176 (N.D.Ill. 1986).[3] Moreover, this Court had noted that it was an open question in this Circuit whether or not a defendant in a preference action must establish by separate evidence that the transfer was "made according to ordinary business terms." *Xonics,* 837 F.2d at 766.

Relying upon the then minority approach, in his response to the first motion for summary judgment, Zazove argued that a material issue of fact remained as to the ordinary practice in the industry.[4] Zazove argued that information regarding ordinary insurance industry terms was in the exclusive control of Associated and was, therefore, unavailable at the time of filing his complaint. Thus, reasonable pre-filing inquiry by Excello would not have established whether late payments were ordinary within the insurance industry. Given the law of this Circuit, Zazove had a viable argument that he did not have access to all of the information necessary to show that

---

3. Since 1987, at least two bankruptcy judges of the Northern District of Illinois have addressed the question and chosen to follow the "minority" approach. See *In re Fin. Partners, Ltd.,* 94 B.R. 537 (Bankr.N.D.Ill.1988), and *In re Global Distribution Network, Inc.,* 103 B.R. 949 (Bankr. N.D.Ill.1989). It appears that the then "minority" view may actually be the majority view today. Michael Bloom, Richard Gorelick, and Heather MacKenzie, *Exceptions to Bankruptcy Preferences: Countryman Updated,* 47 The Business Lawyer 529 (1992) (stating that "recent case law suggests that most courts adopt the combined subjective/objective analysis to evaluate transfers under section 547(c)(2)").

4. Despite Excello's argument in response to the first motion for summary judgment, at the hearing on that motion Excello conceded that Associated had presented sufficient evidence to establish that the matter and timing of the payments was consistent with the ordinary practice in the insurance industry and had established a valid Section 547(c)(2) defense to avoidance of the July and August payments. (Tr. at 22–23 June 30, 1988). Judge James relied on the concession and, thus, did not resolve any further underlying issue with regard to the July and August payments.

the transfers were made within the ordinary course of business. In particular, Associated, Excello's insurance company, possessed information regarding insurance industry custom as to the ordinary manner and timing of payments.

■ A reasonable pre-filing inquiry does not require pre-filing investigation of an affirmative defense when subsequent discovery would be beneficial to the development of the underlying facts and to evaluation of the legal validity of that affirmative defense. See *Brown v. Federation of State Medical Bds. of U.S.*, 830 F.2d 1429 (7th Cir.1987). Rule 9011, like Rule 11, should not be read to conflict with Rule 8, which authorizes notice pleading with discovery to follow. The inquiry required by those rules is a brief pre-filing investigation, not pre-filing discovery. The trustee here did enough to learn that he had a colorable preference action, one not defeated by obvious affirmative defenses. That should be enough.

■ Although we can appreciate Judge James' feeling of frustration that counsel did not make inquiry of relevant facts which were readily available to him regarding the course of conduct between the parties, it was an abuse of discretion to impose Rule 9011 sanctions against Zazove for his reliance upon the then minority approach when there was a split of authority and neither this Court nor the bankruptcy judges for the Northern District of Illinois had addressed the question. Pursuant to Rule 9011, Zazove may rely on any proposition warranted by existing law or some arguable modification or extension. He should have been able to argue, without fear of sanctions, that Judge James should adopt the minority approach, under which Associated would be required to establish that the payments were consistent with ordinary industry practice, information known only by Associated.

### C. Discussion of 28 U.S.C. § 1927

■ Although Associated did not cross-appeal from the district court's reversal of

Rule 9011 sanctions for Excello's failure to withdraw its claim after this Court's decision in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988), Associated now argues that under 28 U.S.C. § 1927, Zazove should be sanctioned for that failure. Because Associated raises this "vexatious" litigation argument for the first time in this Court, it has been waived and will not be addressed. See *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1333 (7th Cir.1977) (quoting *Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 324 (7th Cir.1968)), certiorari denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467.

### D. Conclusion

The judgment of the district court upholding the imposition of sanctions against Zazove for supposed failure to conduct reasonable pre-filing inquiry is reversed.[5]

---

**5.** As mentioned *supra,* there was no cross-appeal as to Judge Conlon's denial of sanctions for failure to withdraw Excello's complaint.