**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-10380
_____

IN THE MATTER OF: CADDO PARISH-VILLAS SOUTH, LTD.,

Debtor.

BEAL BANK, S.S.B.,

Appellee,

VERSUS

CADDO PARISH-VILLAS SOUTH, LTD.,

Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

May 10, 1999

Before DAVIS, STEWART, and PARKER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Debtor-Appellant Caddo Parish-Villas South, Ltd. ("Caddo") seeks review of a district court order reversing and remanding a bankruptcy court order disallowing a claim by Creditor-Appellee Beal Bank, S.S.B. ("Beal"). We need not reach the merits of this appeal, because we find appellate jurisdiction to be lacking under the long-established principle that a district court order is not final within the meaning of 28 U.S.C. § 158(d) where that order reverses an order of the bankruptcy court and remands the case to the bankruptcy court for significant further proceedings. The

appeal is therefore dismissed.

I.

This appeal arises out of a bankruptcy proceeding initiated by Caddo in November 1996. Beal filed a Proof of Claim in connection with that proceeding asserting a secured claim in the amount of $3,286,869.63. The Proof of Claim is based on a Mortgage Note ("Note") secured by an Act of Mortgage ("Mortgage") that encumbers an apartment complex in Shreveport, Louisiana ("Property) belonging to Caddo. The Property is Caddo's sole asset, and the Note is non-recourse.

The Note and Mortgage were originally executed in favor of Housing America Mortgage Company, Inc. ("HAMC") in August 1971. Two years later, HAMC endorsed the Note and Mortgage to Federal National Mortgage Association ("FNMA"). FNMA was the owner and holder of the Note and Mortgage for just over one year, at which time the Note went into default. FNMA then endorsed the Note and Mortgage to the Department of Housing and Urban Development ("HUD"). HUD was the owner and holder of the Note and Mortgage for the next twenty-one years, during which time HUD and Caddo entered into a Provisional Workout Arrangement ("PWA"). When efforts by Caddo to obtain a second PWA failed, HUD began preparations to foreclose its lien against the Property.

HUD did not ultimately foreclose on the Mortgage, but instead sold the Note and Mortgage to Beal in October 1995. HUD did not transfer the Note to Beal at the time of sale. Instead, HUD filed an Act of Notarial Endorsement and Assignment of Mortgage Note and

Mortgage, evidencing HUD's endorsement of the Note to Beal, and an Assignment of Lost Note Affidavit, evidencing that the Note was endorsed in 1973 pursuant to the National Housing Act, that it was subsequently transferred to HUD, and that, at the time of Beal's purchase of the Note, HUD could not locate it despite diligent efforts to do so.

The Note was in default at the time Beal purchased it. Beal sent several letters to Caddo demanding payment, and ultimately accelerated the Note. In August 1996, Beal filed an action in Louisiana state court to foreclose the Mortgage and to obtain appointment of a keeper. The Louisiana state court issued an order of sequestration for the Property and directed the Sheriff of Caddo Parish to appoint Barron Builders and Management Co. as keeper. Caddo initiated the present bankruptcy proceeding soon after.

In March 1997, Caddo filed an Objection to Beal's Proof of Claim, arguing that Beal is not the holder of the Note and therefore is prohibited from enforcing the Note and Mortgage. The bankruptcy court first heard the Objection in April 1997, and determined that Caddo had rebutted the prima facie validity of Beal's claim and had shifted the burden to Beal to prove its claim. At a second hearing in June 1997, the bankruptcy court denied Beal's Motion for Judgment on the Pleadings, held that Beal had not met its burden of establishing its claim, sustained Caddo's Objection and disallowed Beal's claim. Beal then filed a Motion for Reconsideration and submitted an Act of Assignment, executed by HUD, purporting to transfer to Beal HUD's rights to enforce the

Note. The bankruptcy court refused to consider this assignment and denied the Motion for Reconsideration. Beal appealed to the district court, which reversed the bankruptcy court's order and remanded to the bankruptcy court for further proceedings on the issue of indemnification. This appeal followed.

## II.

Caddo contends that this court has jurisdiction to review the district court's order pursuant to 28 U.S.C. § 158(d), which provides that "[t]he courts of appeals shall have jurisdiction of appeals from all *final* decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." (emphasis added). We disagree. Although Caddo accurately identifies the basic principle recognized in In re Eagle Bus Mfg., Inc., 62 F.3d 730, 733 (5th Cir. 1995)--that this court views finality in bankruptcy proceedings in a practical and less technical light in order to preserve judicial and other resources--that principle is insufficient to confer jurisdiction in the present case.[1] A long, unbroken line of cases establishes the general rule in this circuit that a district court order is not a final order under section 158(d) where that order reverses an order of the bankruptcy court

---

[1] The Supreme Court's decision in Connecticut National Bank v. Germain, 503 U.S. 249, 112 S. Ct. 1146 (1992), undercuts the notion that a broad standard of liberality for bankruptcy cases is supportable under 28 U.S.C. § 158(d). In light of this fact, we decline to read Eagle Bus as establishing such a standard. Rather, Eagle Bus recognizes the narrower proposition that appellate jurisdiction over a bankruptcy case vests at the conclusion of a discrete judicial unit within the bankruptcy case, and need not wait until the conclusion of the entire litigation. 62 F.3d at 733.

and remands the case to the bankruptcy court for significant further proceedings. Despite Caddo's valiant efforts to characterize the remand in this case as "essentially ministerial," we find no reason to treat the present case differently from those that have preceded it.

In In the Matter of Ben Hyman & Co., Inc., 577 F.2d 966 (5th Cir. 1977), a debtor appealed a district court order that remanded the case to the bankruptcy court to determine whether one creditor was entitled to exercise a right of set-off in the pending bankruptcy proceedings. This court concluded that it did not have jurisdiction because the district court's order was an interlocutory order. The court noted: "A final order is one in which nothing remains to be done but the mechanical entry of judgment by the trial court. The district court's remand merely requires the bankruptcy court to determine whether the bank has a right of set-off in the straight bankruptcy proceedings; it, therefore, is not final." Id. at 968.

In In the Matter of Cross, 666 F.2d 873 (5th Cir. 1982), a debtor appealed a district court order that upheld the bankruptcy court's determination that a debt was nondischargeable but remanded the case to the bankruptcy court to redetermine the amount of the debt. Although this court ultimately found that it had jurisdiction under a provision of the Bankruptcy Act permitting interlocutory appeals, it first determined that the district court's order was interlocutory rather than final because the district court decided the nondischargeability issue but remanded the issue of the amount

of the debt. Id. at 877.[2]

In In re Emerald Oil Company, 694 F.2d 88 (5th Cir. 1982), a creditor appealed a district court order that reversed the bankruptcy court's grant of summary judgment in favor of the creditor on the bankruptcy trustee's claim of preferential transfer. Dismissing the appeal for lack of jurisdiction, this court stated that the district court's order was not final because "there was no final determination of the rights of the parties to secure the relief they seek." Id. at 89. The court concluded: "The case thus awaits further proceedings in the bankruptcy and district courts before there is an appealable final judgment." Id.

In In re County Management, Inc., 788 F.2d 311 (5th Cir. 1986), defendants in a state partition proceeding that had been removed to bankruptcy court appealed a district court order that reversed the bankruptcy court's grant of summary judgment in favor of the defendants and remanded the case to the bankruptcy court for an accounting and other proceedings. Citing Hyman and Emerald Oil, this court dismissed the appeal for lack of jurisdiction. Recognizing that a bankruptcy case "need not be appealed as a 'single judicial unit' at the termination of the proceeding as a whole," the court nonetheless observed that "even in a bankruptcy case, there must be a 'final determination of the rights of the

---

[2]While both Hyman and Cross arose under the Bankruptcy Act, this court has since relied on them in interpreting the meaning of "final order" under the jurisdictional provisions relating to the Bankruptcy Code of 1978. In re Bowman, 821 F.2d 245, 247 (5th Cir. 1987).

6

parties to secure the relief they seek in this suit' for an order to be considered final." Id. at 313 (citations omitted). The court further observed that a "remand for further factual findings simply is not a final order," because it requires further determination of the rights and liabilities of the parties. Id.

These piecemeal decisions were finally assembled into a single coherent rule in In re Bowman, 821 F.2d 245 (5th Cir. 1987). That case involved the appeal of a district court order that reversed the bankruptcy court's dismissal of a complaint objecting to dischargeability and remanded the case to the bankruptcy court for determination of the merits of the complaint. Characterizing the question at issue, this court observed: "The issue more generally stated is whether a district court order is a final order under 28 U.S.C. § 158(d), where that order reverses an order of the bankruptcy court and remands the case to the bankruptcy court for significant further proceedings." Id. at 246. Addressing that issue, the court concluded: "This circuit has consistently held that such orders are not final orders under 28 U.S.C. § 158(d) and its predecessors." Id. In support of this conclusion, the court cited extensively from both the history and the language of Hyman, Cross, Emerald Oil, and County Management.

Nothing in the case law following Bowman suggests that this circuit has ever deviated from the general rule that a district court order is not final where it reverses an order of the bankruptcy court and remands the case to the bankruptcy court for significant further proceedings. That rule has in fact been

7

reasserted by this court on several occasions. See, e.g., Matter of Nichols, 21 F.3d 690, 692 (5th Cir. 1994). Eagle Bus, the principal case cited by Caddo, involved the appeal of a district court order *affirming* the decision of the bankruptcy court. That situation, obviously, is very distinct from a reversal and remand by the district court. Indeed, in Matter of Aegis Specialty Marketing Inc. of Alabama, 68 F.3d 919 (5th Cir. 1995), decided after Eagle Bus, this court reaffirmed that "when a district court sitting as a court of appeals in bankruptcy remands a case to the bankruptcy court for significant further proceedings, the remand order is not 'final' and therefore not appealable under § 158(d)." Id. at 921.

In the present case, the district court reversed the bankruptcy court's order disallowing Beal's claim, and remanded the case to the bankruptcy court "for a determination of whether Beal Bank should be required to indemnify Caddo Parish from future claims on the Note in accordance with La. UCC § 3-309(b)." The crucial question for jurisdictional purposes is whether this remand for a determination of indemnification requires "significant further proceedings" on the part of the bankruptcy court. If so, then this court lacks jurisdiction under the Bowman rule and its progeny.

Whether a remand order requires "significant further proceedings" within the meaning of Bowman turns on whether the order calls on the bankruptcy court to perform a judicial function or a purely ministerial function. Judicial functions entail significant further proceedings; ministerial functions do not. In

8

County Management, the court observed in dicta that "[t]he salutary purpose of the rule set forth in § 158 is to avoid piecemeal appeals." 788 F.2d at 314 (citation omitted). Accordingly, the court stated, "if we were satisfied that the remand order required the bankruptcy court to fulfill a purely ministerial, rather than judicial, function so that no further appeal would be taken, we might be inclined to treat the district court order as final." Id. Clarifying what it meant by "purely ministerial," the court cited the Seventh Circuit's opinion in In re Fox, 762 F.2d 54, 55 (7th Cir.1985), in which our sister circuit determined that an order is final if "all that remains to do on remand is a purely mechanical, computational, or in short 'ministerial' task, whose performance is unlikely to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal from the order of remand." This court further explained the distinction between ministerial and judicial functions in Aegis Specialty Marketing: "[W]here a district court's remand entails significant further proceedings, such as additional fact-finding, then the order should not be considered final. However, if the remand involves only ministerial proceedings, such as the entry of an order by the bankruptcy court in accordance with the district court's decision, then the order should be considered final." 68 F.3d at 921.

The remand order in the present case plainly requires more than "purely mechanical" or "computational" proceedings, or mere entry of an order in accordance with the district court's decision. Caddo nonetheless argues that the district court's order does not

9

entail significant further proceedings. First, Caddo contends that the indemnification determination is "essentially ministerial," because La. UCC § 3-309(b) requires that the debtor be "adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." We disagree. The fact that a legal determination may be relatively easy to make because it is governed by a clear rule of law does not transform a judicial function into a ministerial function. The bankruptcy court must still determine whether a threat of third-party enforcement of the Note exists, and if so what constitutes adequate protection against loss that might occur by reason of such enforcement. These functions require the district court to make findings of fact and to apply existing law to those facts. In short, they are judicial functions that may give rise to further appeal. Thus, our interest in avoiding piecemeal appeals militates against hearing the present appeal prior to determination of the indemnification issue.

Second, Caddo argues that where the further proceedings required by a district court's remand to the bankruptcy court will neither enhance nor alter this court's resolution of the issues currently before it, and could prove futile in any event, the order is final for purposes of appeal. In support of this proposition, Caddo cites Cullen Ctr. Bank & Trust v. Hensley, 102 F.3d 1411, 1413 n. 3 (5th Cir. 1997). In that case, the bankruptcy court found that the creditor's filing of a judicial lien constituted an avoidable preference under 11 U.S.C. § 547(b) and granted summary judgment against the creditor. The district court affirmed the

10

finding that the lien constituted an avoidable preference, but reversed the grant of summary judgment, holding that the creditor was entitled to assert the good faith transferee for value defense under 11 U.S.C. § 550(b). The district court then remanded the case to the bankruptcy court for proceedings consistent with its opinion. Both parties appealed, and both argued on appeal that the district court's order was final "because the limited and essentially 'ministerial' further proceedings" required by the remand to the bankruptcy court would "neither enhance nor alter" this court's resolution of the issues before it, and "could well prove futile." Id. The Hensley panel agreed in a short footnote. Id.

We do not read Hensley, as Caddo does, for the broad proposition that a remand is ministerial any time it neither enhances nor alters this court's resolution of the issues currently before it, or any time it may prove futile following appeal. Such a reading would be plainly inconsistent with this court's prior holdings in Cross, Emerald Oil, and County Management. Each of those cases involved a situation in which the issues to be resolved on remand neither enhanced nor altered the issues raised on appeal, and each involved a situation in which immediate resolution of the issues on appeal may well have nullified the need for a remand. Yet in each case this court determined that the contested orders were not final and that jurisdiction was therefore lacking.

This court adheres strictly to the maxim that one panel of the court cannot overturn another, even if it disagrees with the prior

11

panel's holding. See Texas Refrigerator Supply v. FDIC, 953 F.2d 975, 983 (5th Cir. 1992). Lacking the authority to overturn the Cross, Emerald Oil, and County Management panels explicitly, we will not read the Hensley decision to do so implicitly. Such a result would be neither proper nor desirable. As the County Management court observed, the purpose of section 158(d)'s finality requirement "is to avoid piecemeal appeals." 788 F.2d at 314. Even where a remand neither enhances nor alters this court's resolution of the issues before it, and even where immediate resolution of an appeal might render the remand futile, we must be wary of accepting jurisdiction where doing so may result in future piecemeal appeals. In the present case, were we to accept immediate jurisdiction and to uphold the district court's order, the bankruptcy court would still have to resolve the indemnification issue on remand. Were either party to disagree with the bankruptcy court's resolution of that issue, the result would be a piecemeal appeal, the very waste of judicial resources that the Bowman rule is designed to avoid. Our basic interest in preserving judicial and other resources therefore obliges us to wait until the bankruptcy court has resolved the issue put to it on remand.

### III.

We find that the district court's order in the present case requires the bankruptcy court to exercise its judicial functions on remand. The order thus entails significant further proceedings and falls outside of the finality requirement of section 158(d) under the Bowman rule. The appeal is therefore DISMISSED.